UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| UCHENNA UGO-ALUM and ASHER BERKOVIC, individually and on behalf of all others similarly situated, ) | No. 23-cv-7458 |

UCHENNA UGO-ALUM and ASHER BERKOVIC,                )
individually and on behalf of all others similarly situated, )      No. 23-cv-7458
                                                                     )
                                    Plaintiffs,              )
             v.                                              )
                                                             )
NEW YORK STATE DEPARTMENT                                    )
OF MOTOR VEHICLES; MARK J.F.                                 )
SCHROEDER, Commissioner (in his official                     )      **CLASS ACTION COMPLAINT**
capacity); JOSHUA VINCIGUERRA,                               )
Deputy Commissioner and General Counsel (in his              )
official and personal capacities); SAYRA CRAFT,              )
Deputy Commissioner and Chief Information                    )      **Jury Trial Demanded**
Officer (in her official and personal capacities); and       )
CHRISTINE M. LEGORIUS, First Assistant,                      )
Counsel (in her official and personal capacities),           )
                                                             )
                                    Defendants.              )      **FILED VIA ECF**
_____                  )

Plaintiffs, by their undersigned attorneys, individually and on behalf of all others similarly

situated, allege as follows:

## NATURE OF THE CASE

1.    This action arises out of Defendant New York State Department of Motor Vehicles'

("DMV") mailing notices of an additional fine, the Driver Responsibility Assessment (the "DRA")

for Vehicle and Traffic Law ("VTL") violations (i.e., traffic tickets), to former New York residents

who had moved out of state.  The DMV mailed notice of the DRA to Plaintiffs' old New York

address although the DMV had been officially notified of Plaintiffs' new and correct address.

2.    The DMV's knowing use of wrong mailing addresses for the notice of the

imposition of the DRA caused Plaintiffs to not know they had been subjected to it so they could

not pay the fine.  Failure to pay the DRA subjected Plaintiffs to additional fines, suspension of

driving privileges in New York, and sanctions including imprisonment. The DMV's knowing mailing of the DRA to the wrong address violated Plaintiffs' Constitutional rights, including under the Due Process Clause of the Fourteenth Amendment.

3.    Before filing this federal action, Plaintiffs used all available means to compel the DMV to remedy its violations, including litigating in New York state courts.[1] Toward the conclusion of Plaintiffs' New York Supreme Court case, the DMV admitted to the court that the DMV knows it has been mailing notices of the DRA to the wrong address and continues to do so.[2] The DMV has known of this problem since at least 2010,[3] yet still has not fixed it.

4.    The trial judge in New York Supreme Court denied the DMV's motion to dismiss in an extensively researched opinion holding that Plaintiffs' Constitutional claims were valid because the DMV's suspending motorists' New York driving privileges and subjecting them to additional fines and possible imprisonment without notice violated the Due Process Clause of the Fourteenth Amendment, as well as the Excessive Fines Clause of the Eighth Amendment.[4]

5.    The trial judge's decision also rejected various jurisdictional defenses by the DMV. Among other holdings, the trial judge ruled that Plaintiffs were not required to pursue their claims pursuant to CPLR Article 78 and its four-month statute of limitations for claims against New York agencies. The trial judge emphasized that, while Article 78 is often used by litigants alleging

---

[1] *See, e.g.*, *Ugo-Alum v. N.Y. State Dep't of Motor Vehicles*, Index No. 153162/2020, 74 Misc. 3d 1231(A), 2022 N.Y. Misc. LEXIS 1306 (Sup. Ct. N.Y. Cnty. Feb. 18, 2022) ("*Ugo-Alum I*").

[2] *See* May 25, 2022 Affirmation of Christine M. Legorius, at ¶¶ 5–9, *available at* NYSCEF Doc. No. 24, Index No. 153162/2020 (Sup. Ct. N.Y. Cnty.) (the "Legorius Aff.").

[3] *See Nuzzolo v. State of N.Y.*, N.Y. Ct. Cl., October 14, 2010, UID No. 2010-015-179 (Collins, J.), *cited with approval by Ugo-Alum I*, 2022 N.Y. Misc. LEXIS 1306, at *13.

[4] *Ugo-Alum I*, 2022 N.Y. Misc. LEXIS 1306, at *8–15.

unlawful actions by New York agencies, Plaintiffs' Due Process claims were not required to be brought under it.[5]

6.     The DMV appealed the trial judge's decision to the Appellate Division, which perfunctorily held that Plaintiffs were required to bring their claims under Article 78 and were time-barred under its four-month limitations period.[6]

7.     Since notice mailed to the wrong address had not and could not be responded to in such a short time, the Appellate Division in essence held that New York law does not afford Plaintiffs a means of redress for the DMV's knowing, if not intentional,[7] mailing notice to the wrong address.

8.     Plaintiffs timely moved the New York Court of Appeals for leave to appeal, but leave was denied.

## THE PARTIES

9.     Plaintiff Uchenna Ugo-Alum is a resident of the State of New Jersey, where he has lived and held a New Jersey driver's license since at least March 16, 2009.  Previously, he was a New York resident, residing in Queens County.   His New York driving record states: "DOCUMENT [i.e., New York driving license] SURRENDERED ON: 03/16/2009 TO NJ."

10.     Plaintiff Asher Berkovic is presently a New York resident.  From approximately November 13, 2014 to June 1, 2023, he was a resident of the Province of Quebec, Canada, where he lived and held a Quebec driver's license.  Prior to November 13, 2014, he was a New York

---

[5]  *See id.*, at *7–8, 10–11.

[6]  *See Ugo-Alum v. N.Y. State Dep't of Motor Vehicles*, Appeal No. 16842, 211 A.D.3d 500 (1st Dep't Dec. 8, 2022) ("*Ugo-Alum II*") (reversing *Ugo-Alum I*), *lv denied*, 39 N.Y.3d 912 (Apr. 27, 2023) ("*Ugo-Alum III*").

[7]  Intent can be inferred as the DMV has refused to fix its known mail-address problem since 2010.

resident, residing in Kings County.  His New York driving record states: "DOCUMENT [i.e., New York license] SURRENDERED ON: 11/13/2014 TO QUEBEC."

11.    Defendant New York State Department of Motor Vehicles is a department of the New York state government.

12.    Defendant Mark J.F. Schroeder is the Commissioner of the DMV.  He is sued in his official capacity.

13.    In his capacity as Commissioner of the DMV, Defendant Schroeder has final decision-making authority for the DMV and bears ultimate responsibility to oversee, authorize, and manage DMV employment policies, practices, and customs.

14.    Defendant Joshua Vinciguerra is Deputy Commissioner and General Counsel of the DMV.  In that capacity, he serves as the chief legal officer of the DMV, supervising the DMV's team of more than 120 attorneys directly employed by the DMV, and also provides legal advice to the Commissioner.  He is sued in his official and personal capacities.

15.    Defendant Sayra Craft is Deputy Commissioner and Chief Information Officer of the DMV.  She has served under that title since April 2023, before which she served as the DMV's Director of Transformation, Data, and Program Support for approximately three years.  In these capacities she has had responsibility for and supervised the DMV employees performing tasks related to: restructuring and modernization of DMV technology; and governance and analytics concerning the data that the DMV collects and maintains regarding motorists, including Plaintiffs and the Class herein.  She is sued in her official and personal capacities.

16.    Defendant Christine M. Legorius is an attorney employed by the DMV and has held titles including First Assistant Counsel in the DMV's Counsel's Office.  In that capacity she has performed tasks including assessing the DMV's liability for and capacity to correct the database

flaws that led to the violations by the DMV that are alleged herein. She is sued in her official and personal capacities.

17.    At all times and as to all events described herein, Defendants Schroeder, Vinciguerra, Craft, and Legorius have acted under the color of state law.

18.    Defendants Schroeder, Vinciguerra, Craft, and Legorius knew of the violations alleged herein, knew these were continuing, and participated in decisions concerning the database flaws underlying the violations. To the extent these Defendants did not have such knowledge or participation, it was because they were willfully ignorant of the continuing violations and database flaws alleged herein or were unlawfully derelict as to basic duties of their positions at the DMV.

## JURISDICTION AND VENUE

19.    This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343(a)(3) (civil rights jurisdiction), and 28 U.S.C. §§ 2201–02 (the Declaratory Judgment Act).

20.    This Court has federal question jurisdiction because the Complaint alleges ongoing violations of the United States Constitution and denial of the rights it affords, which also violate law including 42 U.S.C. § 1983 as pleaded herein.

21.    This Court has jurisdiction over Plaintiffs' claims for declaratory and injunctive relief under 28 U.S.C. §§ 2201–02, as well as under the following: Rule 57 of the Federal Rules of Civil Procedure; the doctrine enunciated in *Ex Parte Young*, 209 U.S. 123 (1908); and the Court's inherent equitable authority.

22.    This Court has jurisdiction to grant relief against all Defendants notwithstanding any assertion of entitlement to Eleventh Amendment immunity, for reasons discussed in further detail below.

23.     This Court has jurisdiction to grant relief against all Defendants notwithstanding any assertion by Defendants that Plaintiffs be required to litigate their claims in state court, which is impossible for reasons discussed in further detail below.

24.     As to venue, this action is properly brought in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTS

**Background**

25.     New York law honors out-of-state[8] driver's licenses of out-of-state residents to drive on New York's roadways.  (*See* VTL § 250(2)).

26.     New York law requires that, when a New York resident moves to another state, he or she (hereinafter "he" or "his") must surrender his New York driver's license to the new state to obtain a new driver's license in that state.  (*See* VTL § 510(8)).

27.     New York participates in the Driver License Compact, an information-exchange agreement between U.S. states and certain Canadian provinces (including Quebec) that use automated systems to ensure trans-jurisdictional notification of changes in individual motorists' details including, but not limited to, change of address and cancelation of the old New York driver's license.[9]

---

[8] "State" as used herein also includes the provinces of Canada.

[9] The Compact is codified by reciprocal statutes in participating states.  *E.g.*, VTL § 516; N.J. Stat. Ann. § 39:5D-1 et seq.; Qbc. Ministry of Travel Regs. C-24.2, r. 16.

28.    On notification by the new state that a New York resident has moved and surrendered his New York driver's license, DMV immediately cancels the old New York driver's license and updates the motorist's information with the new address.

29.    The DRA took effect on November 18, 2004.[10]  A motorist may be subject to a DRA regardless of whether he has a current New York driver's license.  The DMV imposes the DRA upon motorists who have, among other things, received six (6) or more points on their New York driver record within an eighteen (18) month period for convictions of traffic offenses committed in New York, Quebec, or Ontario. (*See* VTL § 503(4)).

30.    The DMV promises that, for each motorist against whom DRA has been imposed, "DMV will send you a statement with the amount you owe." [11]  However, as discussed in detail below, this promise is meaningless when the motorist is a former New York resident, as DMV's notification process ensures that such motorists do not receive timely notice of DRA imposition.

**Defendants Knowingly Ensured That Former New York Residents Would Not Receive Notice Of The Imposition Of The DRA**

31.    The DMV receives notice of all motorists' change of residence and new out-of-state address through the Driver License Compact instantaneously when the motorist surrenders his New York driver's license.

---

[10]  The total assessment for the DRA is $300 for the first 6 points and, for every additional point, another $75 is assessed.  These amounts are not due immediately.  Suspension of driving privileges will occur automatically without further notice in any of the yearly intervals if the yearly installment is not paid.

[11]  "How to pay a driver responsibility assessment", N.Y. Dep't of Motor Vehicles, https://dmv.ny.gov/tickets/how-pay-driver-responsibility-assessment#footnoteref2_0r7iadt (last visited August 22, 2023).

32.     Plaintiffs consist of New York motorists who moved out of New York, surrendered their New York driver's licenses to their new state, and received a driver's license from their new state showing their new, current, mailing address.

33.     Plaintiffs received traffic tickets when driving in New York with their new states' driver's licenses.

34.     New York again received notice of the motorist's new out-of-state address when the motorist provided his out-of-state driver's license (with his current address) to New York law enforcement at the time of the traffic ticket (i.e., his current address is on the traffic ticket itself).

35.     After the traffic ticket is issued, New York used the motorist's correct out-of-state address for all matters related to the underlying violation, including use by the New York prosecutor when prosecuting the violation, and by the New York court when it issued its sentence.

36.     If the sentencing court imposes a penalty for the traffic ticket that triggers a DRA, the DMV mails notice to that motorist demanding payment of the DRA.

37.     Bizarrely, when mailing the DRA notices the DMV does not use the motorist's new out-of-state address as used by the Driver License Compact notification, or by the written traffic ticket, or by the New York prosecutor who prosecuted the violation, or by the New York court when it issued its sentence.

38.     The DMV, instead, mails the DRA notice to the old—wrong—New York address, where the motorist no longer lives.

39.     When Plaintiffs did not receive the DRA and, therefore, did not pay or contest it within 30 days, the DMV imposed a suspension of their driving privileges in New York, without further notice.

40.    When driving in New York while privileges are suspended Plaintiffs were subject to arrest and/or criminal prosecution for Aggravated Unlicensed Operation in the Third Degree ("AUO"), (VTL § 511(1)(a)), or other penalties for Driving Without a License, (VTL § 509(1)). The motorist may have his car impounded.

41.    To prove a violation of AUO, New York must prove that the motorist violated the AUO law knowingly.  This is done by providing evidence that the motorist received notice of his driving suspension.  To prove notice, a DMV employee testifies that the DMV's notice mailing procedures were reasonably calculated to reach the motorist.

42.    For motorists like Plaintiffs, the DMV employees' representations as to the reasonable accuracy of the address used to mail the DRA were false.

43.    Plaintiffs would have paid the DRA on time had they been given notice.  Each of the Plaintiffs timely paid the underlying traffic ticket that gave rise to the DRA.

44.    This notification system provides no notice at all and allows DMV to implement prosecutions and to charge additional fees to Plaintiffs for committing the offense of suspended-privileges driving after they failed to respond to notices they did not receive.

**Plaintiff Ugo-Alum's Suspension Without Notice**

45.    Plaintiff Ugo-Alum moved from Queens County, New York to New Jersey.  After moving to New Jersey, Plaintiff Ugo-Alum went to a New Jersey Motor Vehicle Commission office, obtained a New Jersey driver's license, and surrendered his New York driver's license.

46.    The DMV was immediately notified of Plaintiff Ugo-Alum's new New Jersey license, and corresponding address in that state, via the Driver License Compact.

47.    Plaintiff Ugo-Alum's driving record states: "DOCUMENT SURRENDERED ON: 03/16/2009 TO NJ."  His New York license was cancelled at that time.

48.     Plaintiff Ugo-Alum drove again within New York for work and personal reasons. On December 9, 2015, he received a speeding ticket in Queens, New York, for driving 67 MPH in a 45 MPH zone: a 6-point speeding ticket.  Plaintiff Ugo-Alum pleaded guilty and paid that ticket on January 6, 2016, to the Traffic Violations Bureau ("TVB"), an adjudication branch of the DMV.

49.     The Queens speeding ticket bore Plaintiff Ugo-Alum's New Jersey address, which the officer obtained from Plaintiff Ugo-Alum's New Jersey driver's license.  The ticket included a place for notifying the TVB of any changes in the motorist's address.  When a motorist attempts to pay online the TVB online payment system requires him to update or confirm his address, which Plaintiff Ugo-Alum did.

50.     The DMV assessed a DRA upon Plaintiff Ugo-Alum.

51.     The DRA notice was, nevertheless, mailed to Plaintiff Ugo-Alum's old, invalid, Queens, New York address.

52.     Plaintiff Ugo-Alum did not receive the DRA notice.

53.     On November 9, 2018, Plaintiff Ugo-Alum was driving on Staten Island in New York when he passed through a toll gate.  A police officer stopped him, saying that she believed he had unlawfully crossed over a hazard line.  After running his name through the system, the officer informed Plaintiff Ugo-Alum that his New York driving privileges had been suspended, and that she had the authority to immediately impound his vehicle but was declining to do so at that time.  Instead, she issued two traffic tickets: one for crossing over a hazard line, and the other for driving without a license.

54.     Over the course of roughly the next year, Plaintiff Ugo-Alum tried to contact DMV by telephone and online to find out why his New York driving privileges had been suspended. His multiple phone attempts were unsuccessful: he was placed on hold for hours without ever being

connected to a DMV representative.  His multiple online attempts were fruitless because he was not able to locate information detailing his suspension.

55.    Upon retaining New York traffic law counsel in late 2019, Plaintiff Ugo-Alum learned that the suspension had occurred on March 22, 2016, for failure to pay a DRA fee in 2016.

56.    Plaintiff Ugo-Alum had never received any mailing from the DMV following his move from New York to New Jersey, let alone any mailing notifying him of the imposition of DRA.

57.    Upon information and belief, DMV mailed notification of the DRA (if at all) to Plaintiff Ugo-Alum's old address in Queens, New York, long after anyone known to him resided at that address.

58.    Plaintiff Ugo-Alum promptly paid the $300 DRA on November 12, 2019, as soon as his traffic attorney informed him of the suspension's cause.

59.    In addition, Plaintiff Ugo-Alum needed to retain counsel to uncover the cause of his suspension, and fight the traffic tickets, including the ticket for driving without a license.  The ticket for driving across hazard lines was dismissed on or around November 22, 2019.  The ticket for driving without a license also was dismissed, but not until on or around May 6, 2022.

60.    Plaintiff Ugo-Alum has since been unable to drive in New York State without fear of further wrongful penalty by DMV and does so only when necessary.  This limitation has caused him to incur loss of potential work income, as well as causing him emotional harm from his inability to easily travel to visit family in New York.

61.    In addition, Plaintiff Ugo-Alum's driving abstract still lists the unlawful suspension, and its remaining there has caused him injuries including increased cost of insurance.

**Plaintiff Berkovic's Suspension Without Notice**

62.     Plaintiff Berkovic moved from Brooklyn (Kings County) to Quebec in November 2014.

63.     After moving to Quebec, Plaintiff Berkovic went to Quebec's Ministry of Transportation, surrendered his New York driver's license, and received a Quebec driver's license. The personnel at the Quebec agency informed him that the DMV would be notified immediately of the surrender of his New York driver's license.

64.     The DMV was immediately notified of Plaintiff Berkovic's new Quebec license, and corresponding address in that province, via the Driver License Compact.

65.     Plaintiff Berkovic's DMV driving record states: "DOCUMENT SURRENDERED ON: 11/13/2014 TO QUEBEC." His New York driver's license was cancelled at that time.

66.     After moving to Quebec, from time-to-time Plaintiff Berkovic drove to and within New York, to visit family. During this time he received traffic tickets in New York, including one 3 point speeding ticket on August 6, 2018 in the Colonie Town Court's jurisdiction, and one 3 point stop sign ticket in Queens on May 23, 2019.

67.     The Colonie speeding ticket bore Plaintiff Berkovic's Quebec address, which the law enforcement personnel who made the stop obtained from his Quebec driver's license. The ticket included space for noting any change in the motorist's address. No such change was noted.

68.     When paying for the Colonie Town Court ticket by mail, upon information and belief, the envelope had Plaintiff Berkovic's Quebec address. When attempting to pay the Colonie Town Court online the website asks for the payee's current billing address. Likewise, the TVB online payment system requires all motorists to update or confirm their address, and any payment

by mail would have the motorist's return address. Thus, the DMV and the local court had multiple notices of Plaintiff Berkovic's then-current Quebec address.

69.     Nevertheless, when the DRA was assessed, the notice thereof was mailed to his old, invalid, address in Brooklyn, New York.

70.     In approximately mid-October 2019, Plaintiff Berkovic's parents informed him that a letter from the DMV had arrived in the mail at their Brooklyn address. The letter contained notification that the DMV was imposing a DRA against him. No such notification had ever been sent to Plaintiff Berkovic's correct address in Quebec. Plaintiff Berkovic was unable to immediately receive the DRA notification letter, and obtain necessary legal assistance, in time to prevent suspension of his license. A suspension on Plaintiff Berkovic's driver's license was in place from November 19, 2019 until December 17, 2019.

71.     In addition, Plaintiff Berkovic's driving abstract still lists the unlawful suspension, and its remaining there has caused him injuries including increased cost of insurance.

**Plaintiffs' Prior New York Court Case**

72.     On May 25, 2020, Plaintiffs herein filed a case in New York County Supreme Court as putative class representatives, asserting Constitutional violations and naming the DMV as the defendant.

73.     The DMV moved to dismiss the case on various grounds, including: (1) Plaintiffs were required to bring their claims, if at all, pursuant to CPLR Article 78, whose four-month statute of limitations acted to bar the claims that Plaintiffs only discovered years later due to DMV's invalid notice; and (2) Plaintiffs' Constitutional claims lacked merit because the DMV had no obligation to update its data records to reflect the current address of motorists who moved from

New York and surrendered their New York licenses. These arguments were considered and rejected by Justice Tisch of New York County Supreme Court.[12]

74. Justice Tisch ruled that while Article 78 is often used to challenge agency actions, it does not bar Due Process claims like Plaintiffs'. Justice Tisch also noted that New York courts have the authority to convert any case to an Article 78 proceeding even if not originally filed as such, but Justice Tisch found that conversion was not necessary or equitable given that Article 78's four-month limitations period would work to deny Plaintiffs their right to pursue Constitutional claims of which they were unaware because of the DMV's mailing the notice to the knowingly wrong address. *See id.*, at *6–7, 10.

75. Justice Tisch also found that the DMV could not avoid responsibility for failure to update its records on motorists' current addresses. Among other authorities supporting his conclusion, Justice Tisch cited 2010 findings by the New York Court of Claims—which the DMV itself had submitted to Justice Tisch, and which reprimanded the DMV for the very database flaws that led to the instant violations against Plaintiffs. *Id.* at *9–13.

76. The 2010 Findings detailed the impropriety of the DMV's practices concerning mailing motorists notice of suspension. Specifically, the 2010 Findings noted that the DMV uses one of its databases, which the DMV never updates, to maintain motorist addresses for the purpose of mailing suspension notices—and a separate database, which the DMV regularly updates, to track motorists' current addresses based on recent traffic ticket activity. (*See* 2010 Findings). "For out-of-state licensees," Judge Collins wrote in his 2010 Findings, "the flaws in this procedure are obvious." The 2010 Findings concluded that DMV's failure to reconcile its multiple databases of motorist addresses was not "reasonable under the circumstances." (*Id.*).

---

[12] *Ugo-Alum I*, 2022 N.Y. Misc. LEXIS 1306, at *6–15.

77.     After Justice Tisch denied the DMV's motion to dismiss, the DMV noticed appeal to the New York's Supreme Court, Appellate Division, First Judicial Department.

78.     While the appeal was pending, the DMV submitted to Justice Tisch a motion dated May 25, 2022, and seeking stay of discovery until the resolution of the appeal.  In support of that motion, the DMV submitted the affirmation by Defendant Legorius dated May 25, 2022, which admitted that the DMV continues to maintain separate databases, still "not interconnected," for storing information about motorists who may be subject to suspension but are due notice beforehand.  (*See* Legorius Aff., ¶ 8).

79.     Defendant Legorius's May 25, 2022 affirmation shows that the DMV—though aware of the 2010 Findings' reprimand that the DMV must reconcile its separate databases containing motorists' addresses—continued to ignore the problem even though the recommended remedies would cure DMV's statutory and Constitutional notice violations.

80.     On information and belief, Defendant Legorius's May 25, 2022 affirmation was executed at the direction, express or implied, of Defendant Vinciguerra.

81.     On information and belief, Defendant Legorius's May 25, 2022 affirmation was drafted based on information provided by Defendant Craft and/or supervisees of Defendant Craft who provided information to Defendant Legorius at Defendant Craft's express or implied direction.

82.     On December 8, 2022, the First Department ruled in favor of the DMV on its appeal and reversed Justice Tisch, finding that Plaintiffs' claims were governed by Article 78's four-month statute of limitations and so were time-barred.

83.     In support of this finding, the First Department broadly stated that Constitutional claims have been pleaded in past Article 78 cases.  *Ugo-Alum II*, 211 A.D.3d at 501.  But the First

Department did not address Justice Tisch's conclusion that Due Process claims like Plaintiffs', which assert lack of notice, are outside of Article 78's rapid limitations period.  *See id.*

84.    Plaintiffs timely moved New York's Court of Appeals for leave to appeal the First Department's decision, but the Court of Appeals denied that motion on April 27, 2023, without opinion.  *Ugo-Alum III*, 39 N.Y.3d at 912.

## ABSENCE OF IMMUNITY AND SIMILAR DEFENSES

85.    Plaintiffs possess claims concerning Constitutional violations by the DMV that are valid; that concern an ongoing violative policy by the DMV; that impact countless motorists beyond themselves; and as to which Plaintiffs have been denied redress by New York courts for reasons that have nothing to do with the merits of their claims or the scope of the DMV's liability, which has never been disputed.

86.    There is no basis upon which any Defendant herein validly might assert a defense of immunity under the Eleventh Amendment against Plaintiffs' claims:

87.    The right to maintain driving privileges in compliance with the law and so travel freely is clearly established and protected by the United States Constitution, and cannot be denied absent due process, as Justice Tisch emphasized.  *Ugo-Alum I*, 2022 N.Y. Misc. LEXIS 1306, at *8–9 (listing cases).

88.    Further, no reasonable government agency or official that has responsibilities similar to Defendants' would reasonably find to be lawful the DMV's continuing violations of motorists' Constitutional rights, and refusal to fix the underlying database flaw despite the 2010 Findings' reprimand that the DMV must do so.

## CLASS ACTION ALLEGATIONS

89.     Plaintiffs Ugo-Alum and Berkovic are representatives of a Class that includes all persons who moved from New York, obtained an out-of-state driver's license, had a DRA imposed against them, and to whom the DMV failed to mail notification to the address listed on their out-of-state driver's licenses.

90.     While the exact number of Class members can only be determined through appropriate discovery, Plaintiffs believe that there are thousands of members of the Class.

91.     Plaintiffs' claims are typical of the claims of the other members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct as complained of herein.  Plaintiffs reserve the right to later re-define the Class or define sub-classes of the Class depending on the needs of the case.

92.     There are common questions of law and fact affecting members of the Class, which common questions predominate over questions that might affect individual members.   These questions include, but are not limited to, the following:

a.      Whether Defendants have engaged and are continuing to engage in a practice or custom of not properly updating the DMV's records to reflect the current address of motorists including those in the Class here despite having been officially notified of the current address; and

b.      Whether this practice violates the Eighth Amendment of the United States Constitution; and,

c.      Whether this practice violates the Fourteenth Amendment of the United States Constitution.

93.     Plaintiffs will fairly and adequately represent the other members of the Class. Plaintiffs have no interests that conflict with the interests of other Class members.

94.     Plaintiffs have retained counsel competent and experienced in the prosecution of class action litigation.

95.    A Class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members might be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

96.    Members of the Class can be identified from records maintained by Defendants and can be notified of the pendency of this action by United States mail using a form of notice customarily used in similar class actions.

**AS AND FOR A FIRST
CAUSE OF ACTION
<u>(Fourteenth Amendment Violations)</u>
(Against all Defendants)**

97.    Plaintiffs repeat and reallege each preceding paragraph as if fully set forth herein.

98.    Defendants have violated the Constitutional rights of Plaintiffs and the Class, including under the Due Process Clause of the Fourteenth Amendment, by suspending their driving privileges, fining them, and prosecuting them following imposition of DRA of which they had no notice, because Defendants failed to effectuate such notice, or even take measures reasonably calculated to ensure it was effectuated.

99.    These violations have denied Plaintiffs and the Class basic freedoms.  They have been unable to travel to New York for business or to be with family without fear of further improper penalty.  And in the case of Plaintiff Ugo-Alum and his November 2018 traffic stop, he would have had his vehicle impounded and been left on the side of the road alone without transport, but for the discretion of the officer who made the stop.

100.    Defendants' suspending driving privileges, fining, and prosecuting former New Yorkers for not paying DRA, in light of the failure to effectuate notice thereof, or even take

18

measures reasonably calculated to ensure it was effectuated, were not narrowly tailored to serve a compelling state interest, and were without reason or basis and, thus, without rationality. Defendants thus violated the Fourteenth Amendment to the U.S. Constitution, and their actions in violation were therefore null and void as a matter of law.

**AS AND FOR A SECOND**
**CAUSE OF ACTION**
<u>**(Eighth Amendment Violations)**</u>
**(Against all Defendants)**

101.    Plaintiffs repeat and reallege each preceding paragraph as if fully set forth herein.

102.    Defendants' imposition of fees and prosecutions for driving without a license against former New Yorkers, in light of the failure to effectuate notice that their New York driving privileges were at risk of being suspended for not paying DRA, or even take measures reasonably calculated to ensure such notice was effectuated, amount to excessive fining in violation of the Eighth Amendment to the U.S. Constitution, and Article I of the New York State Constitution, and were therefore null and void as a matter of law.

**AS AND FOR A THIRD**
**CAUSE OF ACTION**
<u>**(Injunction)**</u>
**(Against all Defendants)**

103.    Plaintiffs repeat and reallege each preceding paragraph as if fully set forth herein.

104.    Plaintiffs are entitled to an injunction to enforce their Constitutional rights protecting them against the DMV's continuing failure to address the database flaws underlying the DMV's violations against Plaintiffs.

105.    The right to maintain driving privileges in compliance with the law and so travel freely is established by the U.S. Constitution and is "fundamental" and "substantive" as those terms are used in precedent interpreting the Fourteenth Amendment's Due Process Clause.

19

Defendants' actions have violated Plaintiffs' and fellow motorists' substantive Due Process rights because Defendants' actions were not narrowly tailored to serve any compelling state interest. Nor were these "rational" under the law as they were not reasonably related to a legitimate state goal.

106.    In addition, the right to maintain driving privileges in compliance with the law and so travel freely cannot be suspended absent the minimal procedural safeguards required by the Fourteenth Amendment's Due Process Clause. Defendants, by failing to provide any notice of suspension, have violated Plaintiffs' and fellow motorists' Due Process rights.

107.    Last, Defendants' suspensions without notice of Plaintiffs' right to maintain driving privileges in compliance with the law and so travel freely amounted to "excessive fines" and so violated Plaintiffs' and fellow motorists' rights under the Eighth Amendment.

108.    Plaintiffs are entitled to an injunction requiring that Defendants remedy the database flaws described above, so as to bring the DMV's practices into compliance with the law, on terms that will in the future equitably compensate Plaintiffs and fellow motorists for future negative consequences of Defendants' continuing violations, including the refusal to remove references to suspensions from motorists' abstracts.

109.    Plaintiffs also are entitled to an injunction requiring that the DMV, through Defendant Schroeder, segregate and hold in escrow any future monies collected in connection with the DRA that are attributable to the database flaw described above. Such monies include, but are not necessarily limited to, fines for unlicensed driving that followed a DRA suspension, and fees paid to the DMV for purchases of abstracts.

110.    Plaintiffs and the Class of fellow motorists are suffering and will continue to suffer irreparable harm without injunctive relief because the negative consequences of the unlawful

suspensions will continue to haunt them.  These individuals lack an adequate remedy at law to ensure against further violations, and therefore an injunction is necessary to remedy their injuries.

111.    The balance of equities favors Plaintiffs.  Defendants will not suffer any legally cognizable harm from an injunction enforcing the law.

112.    An injunction is in the public interest because compliance with the law governing motorists' rights is in the public interest.

**AS AND FOR A FOURTH
CAUSE OF ACTION
<u>(Declaratory Judgment)</u>
(Against all Defendants)**

113.    Plaintiffs repeat and reallege each preceding paragraph as if fully set forth herein.

114.    Plaintiffs seek and are entitled to a declaration that Defendants will continue to violate federal law by not addressing the database flaw described above and that some of the funds being collected by the DMV on a continuing basis in connection with the DRA are derived from this violation of the law.

115.    Plaintiffs seek and are entitled to further necessary or proper relief pursuant to such a declaration, as the Court might see fit.

**AS AND FOR A FIFTH
CAUSE OF ACTION
<u>(42 U.S.C. § 1983 Equitable Relief — Fourteenth Amendment Violations)</u>
(Against Defendants Schroeder, Vinciguerra, Craft, Legorius)
(Official Capacities)**

116.    Plaintiffs repeat and reallege each preceding paragraph as if fully set forth herein.

117.    As a direct and proximate cause of Defendants Schroeder, Vinciguerra, Craft, and Legorius's acts and omissions as described above, the Constitutional rights under the Fourteenth Amendment of Plaintiffs and the Class of fellow motorists have been and are continuing to be violated.

118.    By acting under color of state law to deprive Plaintiffs and the Class of their Constitutional rights under the Fourteenth Amendment, Defendants Schroeder, Vinciguerra, Craft, and Legorius are in violation of 42 U.S.C. § 1983.

119.    Plaintiffs and the Class have suffered and will continue to suffer serious and irreparable harm to their Constitutional rights under the Fourteenth Amendment unless Defendants Schroeder, Vinciguerra, Craft, and Legorius in their official capacities are enjoined from continuing to maintain, and refusing to remedy, the database flaw described above.

**AS AND FOR A SIXTH**
**CAUSE OF ACTION**
**(42 U.S.C. § 1983 Equitable Relief — Eighth Amendment Violations)**
**(Against Defendants Schroeder, Vinciguerra, Craft, Legorius)**
**(Official Capacities)**

120.    Plaintiffs repeat and reallege each preceding paragraph as if fully set forth herein.

121.    As a direct and proximate cause of Defendants Schroeder, Vinciguerra, Craft, and Legorius's acts and omissions as described above, the Constitutional rights under the Eighth Amendment of Plaintiffs and the Class of fellow motorists have been and are continuing to be violated.

122.    Plaintiffs and the Class have suffered and will continue to suffer serious and irreparable harm to their Constitutional rights under the Eighth Amendment unless Defendants Schroeder, Vinciguerra, Craft, and Legorius in their official capacities are enjoined from continuing to maintain, and refusing to remedy, the database flaw described above.

**AS AND FOR A SEVENTH**
**CAUSE OF ACTION**
**(42 U.S.C. § 1983 Damages — Fourteenth Amendment Violations)**
**(Against Defendants Vinciguerra, Craft, Legorius)**
**(Personal Capacities)**

123.    Plaintiffs repeat and reallege each preceding paragraph as if fully set forth herein.

124.    Defendants Vinciguerra, Craft, Legorius, sued in their personal capacities, have violated the Constitutional rights under the Fourteenth Amendment of Plaintiffs and the Class of fellow motorists.

125.    As a direct and proximate result of the acts and omissions of Defendants Vinciguerra, Craft, and Legorius, the Constitutional rights under the Fourteenth Amendment of Plaintiffs and the Class have been violated.

126.    As a direct and proximate result of the acts and omissions of Defendants Vinciguerra, Craft, and Legorius, in violation of the Fourteenth Amendment, Plaintiffs and the Class have suffered injuries and damages as set forth above.

127.    The unlawful conduct of Defendants Vinciguerra, Craft, and Legorius, in violation of the Fourteenth Amendment, was willful, malicious, oppressive, and/or reckless.

128.    For their violations of Plaintiffs' Fourteenth Amendment rights, Defendants Vinciguerra, Craft, and Legorius are personally liable to Plaintiffs and the Class for the injuries and damages as set forth above.

129.    In addition, the unlawful conduct of Defendants Vinciguerra, Craft, and Legorius, in violation of the Fourteenth Amendment, was of such a nature that punitive damages should be imposed, as legally permissible.

**AS AND FOR AN EIGHTH
CAUSE OF ACTION
<u>(42 U.S.C. § 1983 Damages — Eighth Amendment Violations)</u>
(Against Defendants Vinciguerra, Craft, Legorius)
(Personal Capacities)**

130.    Plaintiffs repeat and reallege each preceding paragraph as if fully set forth herein.

131.    Defendants Vinciguerra, Craft, Legorius, sued in their personal capacities, have violated the Constitutional rights under the Eighth Amendment of Plaintiffs and the Class of fellow motorists.

132.    As a direct and proximate result of the acts and omissions of Defendants Vinciguerra, Craft, and Legorius, the Constitutional rights under the Eighth Amendment of Plaintiffs and the Class have been violated.

133.    The unlawful conduct of Defendants Vinciguerra, Craft, and Legorius, in violation of the Eighth Amendment, was willful, malicious, oppressive, and/or reckless.

134.    For their violations of Plaintiffs' Eighth Amendment rights, Defendants Vinciguerra, Craft, and Legorius are personally liable to Plaintiffs and the Class for the injuries and damages as set forth above.

135.    In addition, the unlawful conduct of Defendants Vinciguerra, Craft, and Legorius, in violation of the Eighth Amendment, was of such a nature that punitive damages should be imposed, as legally permissible.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment as follows:

 a) Declaring this Action to be a proper plaintiffs' class action, declaring Plaintiffs to be proper representatives of the Class, and declaring Attorneys for Plaintiffs to be class counsel;

 b) Entering injunctive relief in accordance with the First, Second, and Third Causes of Action above;

 c) Entering a declaratory judgment in accordance with the First, Second, and Fourth Cause of Action above;

 d) Entering equitable relief pursuant to 42 U.S.C. § 1983 in accordance with the Fifth Cause of Action above;

 e) Entering equitable relief pursuant to 42 U.S.C. § 1983 in accordance with the Sixth Cause of Action above;

 f) Awarding Plaintiffs damages, in an amount to be determined at trial, pursuant to 42 U.S.C. § 1983 in accordance with the Seventh Cause of Action above;

 g) Awarding Plaintiffs damages, in an amount to be determined at trial, pursuant to 42 U.S.C. § 1983 in accordance with the Eighth Cause of Action above;

 h) Awarding Plaintiffs punitive damages in an amount to be determined at trial;

 i) Awarding Plaintiffs and the Class reasonable attorney fees and expenses incurred in this action;

 j) Granting such other and further relief as the Court might deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues in this action.


Dated:  New York, New York
        August 23, 2023

                                        **FRANK LLP**

                                        By:   _/s/ Gregory A. Frank_
                                              Gregory A. Frank (GF0531)
                                              Marvin L. Frank (MF1436)
                                              Asher Hawkins (AH2333)
                                              305 Broadway, Suite 700
                                              New York, New York 10007
                                              Tel: (212) 682-1853
                                              Fax: (212) 682-1892
                                              info@frankllp.com

                                              *Attorneys for Plaintiffs and the Class*

                                        **LAW OFFICE OF ZEV GOLDSTEIN PLLC**

                                              450 Route 304
                                              New City, New York 10956
                                              Tel.: (845) 371-8457
                                              Fax: (845) 371-5441

                                              *Additional Counsel*

26